IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| KAREN ELAINE CARPENTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:09-CV-140 |
| | ) | |
| THE CITY OF BEAN STATION, | ) | |
| TENNESSEE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

On October 21, 2011, the magistrate judge entered a report and recommendation [doc. 73] and a memorandum opinion [doc. 70], which he fully incorporated into his report and recommendation. In the report and recommendation/memorandum opinion ("Opinion/R&R"), the magistrate judge recommended that the motion for summary judgment filed by defendants Andy Dossett and Ben Dossett be granted to the extent that plaintiff's claim based on the Fourteenth Amendment be dismissed but that the motion be denied in all other respects. The defendants have filed objections to the Opinion/R&R [doc 79]. Plaintiff has responded to the objections [doc. 82], and defendants have submitted a reply [doc. 86]. As required by Federal Rule of Civil Procedure 72(b)(3), the court has conducted a *de novo* review. For the reasons that follow, the court finds that the magistrate judge did not err in his recommendation, and, therefore, the Dossett defendants' objections

will be overruled. Defendants' motion for summary judgment will be granted in part and denied in part.

I.

## *Background*

On January 23, 2009, plaintiff was operating her 1996 Ford Ranger truck on Highway 25E in Bean Station, Tennessee. Officer Adam Morgan observed the vehicle cross the white line three times. When he activated his emergency lights, the vehicle fled. At the time, a warrant for plaintiff's arrest on charges of manufacturing methamphetamine was outstanding. At some point in the pursuit, Officer Andy Dossett joined the chase. Officer Dossett continued to pursue plaintiff at high speeds along dark and narrow rural roads until plaintiff ran her vehicle into a ditch line on the side of the road. Officer Ben Dossett joined the scene pulling up behind Andy Dossett's patrol car. Both officers shot at plaintiff as she tried to get her truck out of the ditch. Ultimately, plaintiff was shot in the face and head, sustaining injuries that resulted in her losing her eyesight entirely.

II.

## *Analysis*

*Heck v. Humphrey*

Defendants object to the magistrate judge's ruling that the doctrine in *Heck v. Humphrey*, 512 U.S. 477 (1994) does not bar the plaintiff's excessive force claim. They

specifically object to the finding that the events in question, the initial high speed automobile chase and use of excessive force, the shooting, were separate incidents. Defendants contend that the video demonstrates that there was one seamless incident and therefore *Heck* applies to bar the excessive force claim. "*Heck* bars § 1983 plaintiffs from advancing claims that, if successful, 'would necessarily imply the invalidity' of a prior conviction or sentence. However, if 'the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.'" *Cummings v. City of Akron*, 418 F.3d 676, 682 (6th Cir. 2005) (quoting *Heck*, 512 U.S. at 487).

In support of their *Heck* argument, defendants rely on *Roberts v. Anderson*, 213 F. App'x 420 (6th Cir. 2007) and *Cummings*. Defendants rely on *Roberts* for the proposition that "under Tennessee law, an officer's excessive use of force is a defense to a charge of resisting or evading arrest; thus, a guilty plea and resultant conviction of such a charge necessarily includes a finding that the officer did not use excessive force." *Roberts*, 213 F. App'x at 427 (citations omitted). Defendants rely on the *Cummings* opinion primarily for the proposition that *Heck* applies when a conviction and excessive force claim are "inextricably intertwined," a circumstance which defendants contend applies here.

Plaintiff was charged with felony evading arrest pursuant to Tenn. Code Ann. § 39-16-603. She later pled guilty to misdemeanor evading arrest. The affidavit of complaint regarding the felony evading arrest charge was drafted by Officer Adam Morgan.

3

He was the first officer to engage the plaintiff in the automobile chase, but he was not on the scene when the shooting occurred. The affidavit provides in relevant part:

> WHEN ACTIVATING MY EMERGENCY EQUIPMENT TO STOP THE VEHICLE, THE VEHICLE FLED EAST ON SLATE HILL AT A HIGH RATE OF SPEED. I LOST SIGHT OF THE VEHICLE ON SLATE HILL WHEN CHIEF ANDY DOSSETT CAME INTO CONTACT WITH THE VEHICLE ON SLATE HILL AT MOUNTAIN METAL. THE VEHICLE CONTINUED TO FLEE FROM CHIEF DOSSETT UNTILL (sic) THE VEHICLE CRASHED ON BIG HILL RD. IN MOORESBURG, TN.

Plaintiff has stated in her affidavit that she pled guilty to the facts related to the police pursuit. The factual basis of the affidavit of complaint on which the evading arrest charge is based ends with the plaintiff's vehicle crashing on Big Hill Road. The conduct by the plaintiff after the truck came to rest in the ditch line is not part of the evading arrest charge and affidavit of complaint.

The court has reviewed the video from Andy Dossett's in-car camera, and it is clear that plaintiff's truck had come to a stop in a ditch line on the side of the road when the Dossett vehicle arrived. At that point, the high speed chase had come to and end, and a new sequence of events began. While plaintiff can be heard revving her truck's engine in an effort to leave the scene once the Dossett vehicle arrived, this attempt to flee is not part of the sequence of events included in the felony evading arrest charge and the charge to which plaintiff eventually pled guilty. Thus, defendants' argument that plaintiff could have raised the excessive force claim as a defense to the evading arrest charge has no merit as the

4

magistrate judge found.

In addition, the defendants' argument based on *Cummings* that the excessive force and evading arrest are "inextricably intertwined" also fails to support a finding that *Heck* bars the claim. As the court's discussion above makes clear, the car chase on which the evading arrest charge was based came to an end when plaintiff's truck crashed or ran off the road into the ditch line. Her vehicle had come to a stop. While she did try to leave the scene by revving her engine when Andy Dossett arrived, she was not charged with that evasion and did not plead to it. The Dossetts' shooting at plaintiff is not inextricably intertwined with the events of the car chase. Further, since the charging affidavit and plaintiff's affidavit show that she did not plead guilty to evading arrest after her truck came to a stop, her excessive force claim would not invalidate the conviction. *Cummings*, 418 F.3d at 682. Therefore, defendants' objection on this basis will be overruled.

Qualified Immunity

In his Opinion, the magistrate determined that both Dossett defendants were not entitled to qualified immunity. The defendants object that in his qualified immunity analysis the magistrate did not perform a separate analysis for each individual defendant's entitlement to qualified immunity; he erred in finding the force used by the officers was unreasonable; and he did not consider whether the constitutional right at issue was clearly established in this unique factual setting at the time of the incident. The court's discussion

5

that follows will encompass these objections.

In determining qualified immunity, the court views the facts in the light most favorable to the plaintiff and determines 1) whether violation of a constitutional right has occurred; and 2) whether the constitutional right "was clearly established at the time of defendant's alleged misconduct." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Excessive force qualified immunity cases should be analyzed using the two-step rather than three-step analysis employed by some panels of the Sixth Circuit. *Id.* Lower courts now have the discretion to consider the second step in the analysis first if appropriate. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). This court, however, agrees with the Sixth Circuit's approach in *Grawey* of applying the traditional analysis in excessive force cases: first determining whether plaintiff "has presented evidence of an excessive force constitutional violation and then whether the constitutional right violated was clearly established at the time of the incident." *Grawey*, 567 F.3d at 309.

<u>Andy Dossett</u>
**Constitutional Violation**

To survive summary judgment, plaintiff must demonstrate a violation of her constitutional rights and that the violated rights were clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The shooting of plaintiff is a seizure subject to the Fourth Amendment's reasonableness requirement. *Tenn. v. Garner*, 471 U.S. 1, 7, 9 (1985). With

6

regard to deadly force, the Supreme Court "explained in *Garner* that it is unreasonable for an officer to 'seize an unarmed, nondangerous suspect by shooting him dead.' But '[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.'" *Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004) (citations omitted). The Sixth Circuit has noted that "[q]ualified immunity in cases involving claims of deadly force is difficult to determine on summary judgment because liability turns upon the Fourth Amendment's reasonableness test." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998).

The Fourth Amendment's reasonableness test is an objective one that "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts should consider three factors when determining the reasonableness of an officer's actions under the Fourth Amendment: "(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the police officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 396). "These factors are not an exhaustive list, as the ultimate inquiry is whether the totality of circumstances justifies a particular sort of seizure." *Id*. (internal quotation marks and citations omitted). The court may not substitute its own judgment for that of the officer on the scene but must

allow "for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving- about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. However, the Sixth Circuit has noted that "only in rare instance may an officer seize a suspect by use of deadly force." *Livermore*, 476 F.3d at 404 (citation omitted). "[A]n officer accused of using deadly force in violation of a suspect's Fourth Amendment rights should not be afforded qualified immunity if, on an objective basis, it is obvious that no reasonably competent officer would have [shot the victim]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Murray-Ruhl v. Passinault*, 246 F. App'x 338, 343 (6th Cir. 2007) (alteration in original)(citing *Sova*, 142 F.3d at 903).

The pivotal piece of evidence in this case is the video from Andy Dossett's in-car camera. For ease of discussion, the court provides below the magistrate's detailed break out of the events during the critical shooting sequence.

> [P]laintiff's vehicle is off the roadway to the left, in the ditch line, and parallel to the road. Andy Dossett stops *beside her*; not in front of her, not behind her, but directly beside her. For precisely ten seconds, nothing can be seen on the recording other than the roadway in front of the two vehicles, lit by the headlights. Presumably, during that ten seconds Andy Dossett is making his unsuccessful effort to open plaintiff's passenger door. Plaintiff clearly is continuing to accelerate her engine, but to no avail. . . .
>
> After ten seconds, Andy Dossett appears on camera with his gun drawn and aimed at the passenger compartment of the truck. Andy Dossett is yelling something, but the noise generated by his siren and plaintiff's screaming engine completely drowns out

8

his voice. Within a matter of just a few seconds, he fires three shots at the front tire of plaintiff's vehicle. As he does so, Andy Dossett glances to his left, toward the rear of the vehicle, presumably at Ben Dossett. As Andy Dossett fired his three shots at the tire, another shot can be heard, which obviously was fired by Ben Dossett. After firing his three shots, Andy Dossett raises his left hand and again glances to his left, clearly signaling to Ben Dossett to either stay back or back away. Due to the cacophony of the screeching engine and the sirens, it is difficult to tell for certain, but there are sounds on the recording consistent with Ben Dossett firing additional shots. Notwithstanding all the shots fired, plaintiff's engine continued to race. Andy Dossett then fired a series of rounds into the engine compartment, or so it appears. At 23:00:08, Andy Dossett is seen to suddenly walk backwards, then walk forward, and then backwards again. At 23:00:20, he all but runs backward, more or less firing his weapon wildly, at which time the recording captures a "lurch" of plaintiff's vehicle. It did not come out of the ditch line. Then, at 23:00:23, Andy Dossett again comes within camera range, with his weapon pointed at plaintiff's vehicle, although he fired no more shots. What obviously is Ben Dossett's arm appears at the same time, and Ben Dossett fires another shot. At 23:00:28, both officers disappear from the recording; Andy Dossett reappears at 23:00:41 as he runs up to the truck, obviously to look in. He then runs somewhere behind his own car. At this point it is all over.

For the reasons that follow, the court concludes that notwithstanding plaintiff's efforts to leave the scene, Andy Dossett's response was not as a matter of law objectively reasonable. The video shows, viewed in the light most favorable to the plaintiff, that her truck was stopped off the road in a ditch line, and in spite of her efforts in revving the engine, she was unable to get the truck back on the road. Although the truck lurched forward once after several shots had been fired, it did not even reach the roadbed. There were no members

9

of the public or bystanders in the area whose physical safety could have been threatened, and no other vehicles or traffic were in the area. The incident took place at approximately 11:00 p.m. on a rural road with only the officers and the plaintiff present. Andy Dossett had control over where he positioned himself in relation to the truck, walking backwards and forwards and at times even able to run to change his position. He moved freely on foot along the passenger side of plaintiff's vehicle, not in front of the vehicle if it left the ditch.

Even viewing the events in the excitement of the moment and without 20/20 hindsight, a trier of fact could conclude that a reasonable officer in Andy Dossett's position was not in *immediate* danger. The circumstances did involve split-second decision making in a rapidly evolving setting. *Connor*, 490 U.S. at 397. However, the simple fact that the case involves a rapidly evolving situation is not itself sufficient to allow the use of deadly force. *Smith v. Cupp*, 430 F.3d 766, 775 (6th Cir. 2005). In *Cupp*, the Sixth Circuit affirmed the district court's denial of qualified immunity to an officer who shot and killed an arrestee who had seized control of the officer's patrol car when he had been left unattended in the car. The officer maintained that he fired on the patrol car in self-defense as it accelerated toward him; however, the Sixth Circuit found that a reasonable jury could conclude that the officer "did not fire as the vehicle was bearing down on him in fear of his life . . . [rather he] fired as he ran toward the driver side of the car after the car passed him." *Id*. at 774. The Sixth Circuit held in part that "[a]lthough this circuit's previous cases give substantial deference to an officer's decision to shoot a unarmed suspect in a car chase, the officer must have

reason to believe that the car presents an *imminent danger*." *Id*. (emphasis added). The previous cases referred to by the Sixth Circuit are *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992) and *Scott v. Clay County*, 205 F.3d 867 (6th Cir. 2000).

In *Smith*, the Sixth Circuit found that "a police officer was justified in using deadly force to stop a suspect from continuing his dangerous flight after the suspect had twice attempted to ram a police cruiser and, having been cornered, turned and sped back up a street endangering a number of officers attempting to stop him." *Cupp*, 430 F.3d 775. In *Scott*, a car involved in a high speed chase was cornered and suddenly accelerated toward an officer. The officer leapt out of the way and shot at the car when it turned toward another approaching police vehicle. A passenger in the fleeing car was wounded. *Scott*, 205 F.3d at 872-73.

While "a car can be a deadly weapon," *Smith*, 954 F2d at 347, an officer must have a reasonable belief "that the car presents an imminent danger." *Cupp*, 430 F.3d at 775. A consideration of the facts presented by the video in this case presents a situation in which there is a question whether a reasonable officer would have believed his or anyone else's life was *imminently* in danger from plaintiff's attempts to flee out of the ditch line. Plaintiff's truck was not readily maneuverable and or able to speed toward Officer Dossett like the suspects' vehicles in *Smith* and *Scott*. Andy Dossett was able to control where he was located in relation to the truck, moving freely and quickly at will, and he had time to try and disable the truck.

11

An additional relevant factor is the type of crime for which plaintiff was being sought, manufacture of methamphetamine. While drug crimes are serious in nature, they do not carry the degree or magnitude of danger or peril that crimes of violence do such as armed robbery or murder. This factor weighs against the use of deadly force. Also, as mentioned above, there were no bystanders, members of the public, or traffic in the area that could have been placed in danger by plaintiff's actions. The only possible threat to the public would have existed if plaintiff had been successful getting the truck out of the ditch line and back on the road and the officers chose to resume the chase. This threat became diminished, however, once Andy Dossett shot out the truck's front right tire. Therefore, based upon the record in this case, a reasonable trier of fact could determine the Andy Dossett's belief that danger or threat of death was imminent was unreasonable. Hence, a jury would be entitled to determine whether his use of force was unreasonable and thus unconstitutional. *Id*.

## Clearly Established Right

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id*.

Defendant Andy Dossett argues that *Brosseau v. Haugen*, 543 U.S. 194 (2004) applies to demonstrate that the right was not clearly established to put him on notice that his conduct in this specific situation would be unlawful. In *Brosseau*, the Supreme Court reversed the denial of qualified immunity to an officer who shot a suspected felon attempting to flee in a vehicle "where the officer had arguable probable cause to believe that the suspect posed an imminent threat of serious physical harm to several officers and citizens in the immediate surrounding area." *Cupp*, 430 F.3d at 776. In *Brosseau*, there was a no-bail warrant out for the arrest of the suspected felon. The officer believed the suspect had entered his vehicle to obtain a gun and she therefore broke the window of the vehicle and attempted to stop him by hitting him on the head with the butt and barrel of her gun. The suspect began taking off out of the driveway where the vehicle was located. The officer shot the suspect in the back as he fled since she feared for the officers on foot and others in the immediate area, which included a woman and her three year old child in a vehicle just a few feet away.

The Supreme Court considered several cases involving officer shootings in the context of a fleeing vehicle and concluded that the cases "by no means 'clearly establish' that [the officer's] conduct violated the Fourth Amendment." *Brosseau*, 543 U.S. at 201. The Court noted that the officer's actions "fell in the 'hazy border between excessive and acceptable force.'" *Id*. (citing Saucier, 533 U.S. at 206).

13

In *Cupp*, the Sixth Circuit distinguished the facts in *Brosseau*, finding them not to be comparable. The Court found that there was "no comparable evidence that [the officer] had cause to believe that [the suspect] posed an immediate risk of death or serious danger." *Cupp*, 430 F.3d at 776. Because the case was so different from *Brosseau*, the Sixth Circuit concluded that *Tennessee v. Garner*, 471 U.S. 1 (1985), "by itself, clearly establishes the right at issue." *Id*.

The facts in this case also are not comparable to those in *Brosseau*. The plaintiff in this case was not armed and was not actually in flight when shot. The officer in *Brosseau* had as a consideration innocent bystanders in the very immediate area whose safety was threatened as well as several officers on foot in the vicinity. Officer Andy Dossett did not struggle physically with the plaintiff and she did not display violent tendencies, unlike the circumstance in *Brosseau*. "[This] case is an obvious case where *Tennessee v. Garner* clearly establishes the law. General statements of the law are capable of giving clear and fair warning to officers even where the very action in question has [not] previously been held unlawful. Thus, where a general constitutional rule applies with obvious clarity to a particular case, factually similar decisional law is not required to defeat a claim of qualified immunity." *Id*. at 776-77 (internal quotation marks and citations omitted).

As the Sixth Circuit found in *Cupp*, the case herein is different from *Brosseau* and presents a situation more closely aligned with *Cupp*. Therefore, the situation in this case permits a finding that *Garner* "clearly establishes" the right at issue, i.e., the right not to be

14

shot unless the suspect poses an *immediate* threat to the officers or others. *Garner*, 471 U.S. at 11. Because Andy Dossett had no reason to believe that he was subject to *immediate* risk of death or serious danger, this is a case of a violation of a clearly established right under *Garner*.

Ben Dossett

Although he is not seen on the video, except for what is presumably his arm at one point in the video, Officer Dossett was present at the scene and shot at the plaintiff multiple times. In his affidavit, he states that he went up to the truck and tried to break the passenger side window, but was only able to crack it. He further states that the plaintiff was revving the truck engine and rocking the truck back and forth trying to get it out of the ditch. While he was positioned between the truck and Andy Dossett's patrol car he shot at plaintiff's truck two or three times.

Ben Dossett's actions regarding the shooting are subject to the same objective reasonableness and qualified immunity analysis as set forth above for officer Andy Dossett. The result is the same. As the magistrate observed, they acted in concert. For the same reasons as already discussed, a reasonable jury could determine that Ben Dossett did not have a reasonable belief that the plaintiff presented an *imminent* threat of death or serious danger to him or the public. Further, as presented herein, the plaintiff's constitutional right was clearly established. Thus, qualified immunity is also denied as to Ben Dossett.

State Law Claims

The magistrate judge found that there remain questions of fact for a jury concerning plaintiff's state law claims for assault and battery and outrageous conduct. Defendants object that the magistrate did not specifically identify what questions remain. Plaintiff's motion seeking a deferral or denial of defendants' motion for summary judgment argues that a decision on the state law claims would be premature, and she asks the court not to rule until discovery is complete.

At this point, the individual officer defendants remain in the lawsuit and issues as to the state law claims remain to be developed and resolved. Ruling on those claims would be premature.

III.

### *Conclusion*

For the reasons stated herein, defendants' objections to the magistrate's Opinion/R&R will be overruled. The court agrees with the ultimate results reached by the magistrate in his Opinion/R&R. Some of the reasoning and conclusions employed by this court differ and may even be in some respects inconsistent with those utilized by the magistrate. To the extent that is the case, the court respectfully disagrees with the magistrate while still accepting other portions of his Opinion/R&R along with his final result.

An order consistent with this opinion will be entered.


ENTER:


s/ Leon Jordan
United States District Judge